UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JENNIFER MILLER SOSA, et al.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 15-1790** |
| **DOLLAR GENERAL CORP., et al.** | **SECTION: "G"(2)** |

## ORDER

Pending before the Court is Defendant DG Louisiana, LLC's ("DG Louisiana") "Motion for Partial Summary Judgment."[1] Having considered the motion, the memoranda in support and in opposition, the applicable law, and the record, the Court will deny the motion.

## I. Background

This litigation arises out of an alleged slip-and-fall incident in which Plaintiffs Jennifer Miller Sosa ("Mrs. Sosa") and Marco A. Sosa (collectively, "Plaintiffs") claim that Mrs. Sosa slipped on a wet floor and fell at a store owned by Defendant in Gramercy, Louisiana.[2] Plaintiffs claim that Mrs. Sosa suffered serious injuries to her left knee, requiring two surgeries and months of physical therapy.[3]

Plaintiffs filed the petition in this matter in the 23rd Judicial District Court for the Parish of St. James on May 7, 2015,[4] and Defendant filed a Notice of Removal on May 28, 2015.[5]

---

[1] Rec. Doc. 19.

[2] Rec. Doc. 1-2 at 2.

[3] *Id.* at 3.

[4] *Id.* at 2.

[5] Rec. Doc. 1.

1

Defendant filed the pending motion on February 16, 2016.[6] On February 19, Plaintiffs filed an opposition.[7] Also on February 16, Defendant filed a motion in limine to exclude evidence or opinion testimony regarding the need for future medical treatment or the costs thereof.[8]

## II. Parties' Arguments

### A. Defendant's Arguments in Support of Motion for Partial Summary Judgment

In its motion, asserts that it is entitled to summary judgment dismissing any claim for future treatment and future medical expenses.[9] Defendant avers that although Plaintiffs' counsel had recently suggested that Mrs. Sosa may seek future medical treatment from her orthopedic surgeon, Dr. Pamela Petrocy ("Dr. Petrocy"), to date, Defendant has received no evidence to suggest that Mrs. Sosa needs future medical treatment, nor any recommendation that she undergo any further treatment.[10] Defendant alleges that Plaintiffs' deadline for producing expert reports was December 30, 2015, but they have not produced any reports or records regarding the need for or cost of future treatment.[11] Furthermore, Defendant avers, Plaintiffs filed a witness list on January 28, 2016 that did not identify any doctors who have opined that Mrs. Sosa needs any future treatment.[12] Therefore, Defendant argues that Plaintiff will be unable to meet her burden of proof at trial.[13]

---

[6] Rec. Doc. 20.

[7] Rec. Doc. 22.

[8] Rec. Doc. 19.

[9] Rec. Doc. 20-1 at 2.

[10] *Id.* at 1–2.

[11] *Id.* at 2.

[12] *Id.*

[13] *Id.*

According to Defendant, in a personal injury suit, Plaintiffs bear the burden of proving a causal relationship between the injury sustained and the accident that caused the injury.[14] Defendant contends that Plaintiff must prove through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident.[15] Defendant argues that future medical expenses, like any other damages, must be established with some degree of certainty, and cannot be predicated on mere speculation.[16] Thus, Defendant contends, awards for future medical expenses that may or may not be incurred require medical testimony indicating that they are needed and the probable cost of any such treatment.[17]

Here, Defendant avers, Plaintiffs "have presented no evidence, let alone medical testimony from a more probable than not degree of certainty, to support an allegation that [Mrs. Sosa] will need a future treatment."[18] According to Defendant, Dr. Petrocy has no future appointments scheduled for Mrs. Sosa, and at Dr. Petrocy's deposition, she did not opine that future treatment is needed on a "more probable than not" basis.[19] Defendant asserts that Dr. Petrocy testified that, as Mrs. Sosa was discharged from physical therapy in January 2015 and has not seen Dr. Petrocy since June 2015, Mrs. Sosa has met her goals, and her strength and range of motion have reached full functionality.[20] Defendant claims that none of the records produced to date have indicated that

---

[14] *Id.* at 3 (citing *Am. Motorist Ins. Co. v. Am. Rent-All, Inc*., 579 So. 2d 429 (La. 1991)).

[15] *Id.* (citing *Mart v. Hill*, 505 So. 2d 1120 (La. 1987)).

[16] *Id.* (citing *Beasley v. Yokem Toyota*, 33,805 (La. App. 2 Cir. 8/23/00); 767 So. 2d 149, 160).

[17] *Id.* (citing *Beasley*, 767 So. 2d at 160 (citing *Morris v. United Servs. Auto. Ass'n.*, 32,528 (La. App. 2 Cir. 2/18/00); 756 So. 2d 549, 557).

[18] *Id.*

[19] *Id.*

[20] *Id.* at 4–5.

Mrs. Sosa has been recommended for, or has any need for, any future treatment.[21] Defendant contends that, without medical testimony that Mrs. Sosa will need such treatment, and that treatment is more probably than not related to the alleged injuries she sustained in the subject accident, Plaintiffs cannot meet their burden of proof at trial, and thus Defendant is entitled to summary judgment on Plaintiffs' claim for future treatment and future medical expenses.[22]

### B.     *Plaintiffs' Arguments in Opposition to Motion for Partial Summary Judgment*

In opposition to partial summary judgment, Plaintiffs argue that as of Mrs. Sosa's most recent medical evaluation of June 24, 2015, Dr. Petrocy, her treating physician, testified that, 13 months after her first surgery, Mrs. Sosa was "complaining of intermittent pain and swelling as well as stiffness," and that Dr. Petrocy had discussed with Mrs. Sosa "continuing strengthening exercises directed at the quadriceps . . . and recommended cortisone injection for the swelling."[23] According to Plaintiffs, Mrs. Sosa continues to remain a treating patient of Dr. Petrocy, who refills medications and muscle relaxers upon request and maintains an "open door policy" for her treatment of Mrs. Sosa.[24] Furthermore, Plaintiffs contend, although Defendant has claimed that Plaintiffs did not produce any evidence to support the need for future treatment, Dr. Petrocy stated at her February 4, 2016 deposition that when a patient fractures a joint, such as a knee cap, the injury "never heals back exactly the same way, so [patients] are more susceptible to arthritis afterward."[25] According to Plaintiffs, when asked how long an average patient who had gone

---

[21] *Id.* at 5.

[22] *Id.*

[23] Rec. Doc. 22 at 7.

[24] *Id.* at 7–8.

[25] *Id.* at 8.

through the type of surgeries and procedures Mrs. Sosa had gone through would need to continue with home exercises, Dr. Petrocy responded, "[u]nfortuanetly with the patella it tends to be a lifelong kind of thing . . . ."[26] Plaintiffs also quote deposition testimony in which Dr. Petrocy stated that, in a case such as Mrs. Sosa's, a patient might return once a year for "intermittent cortisone injection or other treatment as needed."[27] Therefore, Plaintiffs aver, there is a disputed issue of material fact concerning whether Mrs. Sosa will require future medical treatment, as her physician and surgeon has stated that Mrs. Sosa's knee and patella will never return to the way it was prior to the injury, and Mrs. Sosa will likely require additional treatment as a result of pain or swelling.[28]

In addition, Plaintiffs argue, Dr. Petrocy testified at her deposition regarding anticipated future medical treatment.[29] According to Plaintiffs, Dr. Petrocy's testimony is corroborated by the deposition of Mrs. Sosa, who testified that she continues to suffer from pain and that she has received cortisone injections.[30] Plaintiffs quote Mrs. Sosa's deposition testimony, wherein she states that, on a scale of 1 to 10, one year after the accident she continued to experience a level "four" pain on "a good day," and "an eight" on "a bad day."[31] According to Plaintiffs, by the time of her deposition testimony in October 2015, Mrs. Sosa's pain level ranged from a four on a good day to a nine on a bad day, with Mrs. Sosa continuing to experience her knee giving out

---

[26] *Id.*

[27] *Id.* at 9.

[28] *Id.*

[29] *Id.* at 10.

[30] *Id.*

[31] *Id.* at 10–11.

occasionally, muscle spasms, and difficulty walking.[32] Plaintiffs also quote Mrs. Sosa's deposition testimony, wherein she states that she continues to take medication for her left knee every night, including Tylenol and muscle relaxers, as prescribed by Dr. Petrocy.[33]

Plaintiffs contend that they have provided substantial medical records that establish that the cost of one cortisone injection is $597.[34] Plaintiffs argue that a reasonable jury could find that Mrs. Sosa will more likely than not suffer for the rest of her life and require cortisone shots on a yearly basis.[35] Plaintiffs also aver that Mrs. Sosa will be more likely to suffer from arthritic pain in the future.[36] According to Plaintiffs, when the record establishes that future medical expenses will be "inevitable," courts should not preclude an award because the record does not provide the exact value of such expenses, if the Court can determine from the record, the past medical expenses, and other evidence a minimum amount that reasonable minds could not disagree would be required.[37] Therefore, Plaintiffs argue, the Court should award all future medical expenses that the medical evidence establishes that the plaintiff, more probably than not, will incur.[38] Here, Plaintiffs aver, Mrs. Sosa's claims for future pain and suffering, future medical treatment, and

---

[32] *Id.* at 11.

[33] *Id.* at 12.

[34] *Id.* at 13.

[35] *Id.*

[36] *Id.*

[37] *Id.* (citing *Levy v. Bayou Indus. Maint. Servs., Inc.*, 03-0037, p. 9 (La. App. 1 Cir. 9/26/03); 855 So. 2d 968, 975).

[38] *Id.* at 14 (citing *Hymel v. HMO of La., Inc.*, 06-0042, pp. 26–27 (La. App. 1 Cir. 11/15/06); 951 So. 2d 187, 206).

6

costs are supported by sufficient evidence, including Dr. Petrocy's testimony and substantial medical records and bills previously produced to Defendant.[39]

### III. Law and Analysis

*A.     Legal Standard*

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[40] When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[41] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[42] If the record, as a whole, could not lead a rational trier of fact to find for the non-moving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[43]

On a motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[44] Where the non-moving party bears the burden of proof at trial, as here, the party

---

[39] *Id.* at 15.

[40] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[41] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[42] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[43] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[44] *Celotex,* 477 U.S. at 323.

moving for summary judgment may meet its burden by showing the Court that there is an absence of evidence to support the non-moving party's case.[45] Thereafter, if the moving party satisfies its initial burden, the burden shifts to the non-moving party to "identify specific evidence in the record, and articulate" precisely how that evidence supports her claims.[46] In doing so, the non-moving party may not rest upon mere allegations or denials in her pleadings, but rather must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[47] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[48] There is no genuine issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[49]

*B.    Analysis*

On a motion for summary judgment, Defendant bears the initial burden of identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[50] Here, Defendant avers that Plaintiffs have presented no testimony or evidence whatsoever to suggest that Mrs. Sosa needs future medical treatment, any recommendation that she undergo any

---

[45] *Id.* at 325.

[46] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[47] *Morris*, 144 F.3d at 380 (citing *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992)); *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[48] *Little*, 37 F.3d at 1075.

[49] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).

[50] *Celotex,* 477 U.S. at 323.

further treatment, or any evidence of what the cost of such treatment would be.[51] Therefore, Defendant argues that because Plaintiff will be unable to meet her burden of proof at trial, Defendant is entitled to summary judgment dismissing any claim for future treatment and future medical expenses.[52]

Regarding the need for future medical treatment, Defendant cites Dr. Petrocy's deposition testimony, wherein she answers "No" to defense counsel's question, "So can you give me an opinion [as to whether or not Mrs. Sosa is going to require cortisone injections in the future] having not seen her in over seven months on a more probably than not basis?"[53] As such, Defendant argues, Plaintiffs "have presented no evidence, let alone medical testimony from a more probable than not degree of certainty, to support an allegation that she will need a future treatment."[54] In response, however, Plaintiffs cite other portions of Dr. Petrocy's testimony, wherein she states that she had discussed with Mrs. Sosa "continuing strengthening exercises directed at the quadriceps . . . and recommended cortisone injection for the swelling."[55] Dr. Petrocy also stated in her deposition testimony that when a patient fractures a joint, such as a knee cap, the injury "never heals back exactly the same way, so [patients] are more susceptible to arthritis afterward."[56] Dr. Petrocy also stated that, for injuries like Mrs. Sosa's, "[u]nfortuantely with the patella it tends to

---

[51] Rec. Doc. 20-1 at 1–2.

[52] *Id.*

[53] *Id.* at 4 (citing Dr. Petrocy Dep., Rec. Doc. 20-2, at 46:19–47:2).

[54] *Id.*

[55] Rec. Doc. 22 at 7 (citing Dr. Petrocy Dep., Rec. Doc. 22-1 at 33:17–21).

[56] Dr. Petrocy Dep., Rec. Doc. 22-1 at 40:24–41:6.

be a lifelong kind of thing . . . ."[57] Finally, Dr. Petrocy has also stated that, in a case such as Mrs. Sosa's, a patient might return once a year for "intermittent cortisone injection or other treatment as needed."[58]

In order to prove at trial that a plaintiff requires future medical treatment, "the Plaintiff must show it is more probable than not that future medical expenses will be incurred. Medical testimony is required to support an award of future medical expenses."[59] Furthermore, a court may limit testimony regarding future medical treatment and damages that is "entirely speculative . . . because any probative value of such testimony is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."[60] Here, it appears that Dr. Petrocy may present conflicting evidence regarding whether Mrs. Sosa will require future medical treatment.[61] Although Dr. Petrocy stated in one part of her deposition testimony that she could not opine on a "more probable than not degree of certainty" regarding whether Mrs. Sosa would require future cortisone injections,[62] elsewhere in her deposition, Dr. Petrocy made multiple comments that Mrs. Sosa's injuries may never fully heal and that she could require future medical treatment relating to the accident. It is not appropriate for the Court to weigh the evidence or determine the credibility

---

[57] *Id.* at 44:10–11.

[58] *Id.* at 45:6–7.

[59] *Hayes v. Clark*, 2003-272 (La. App. 3 Cir. 10/1/03); 866 So. 2d 251, 254–55, *writ denied*, 2004-0924 (La. 6/4/04), 876 So. 2d 83.

[60] *Horridge v. Keystone Lines, Inc.*, No. 1:06CV1226-HSO-MRG, 2008 WL 4514310, at *2 (S.D. Miss. Oct. 1, 2008).

[61] In the Court's simultaneous ruling, the Court determines that Dr. Petrocy may testify regarding certain subjects despite Plaintiffs' failure to comply with Federal Rule of Civil Procedure 26(a)(2).

[62] Dr. Petrocy Dep., Rec. Doc. 20-2, at 46:19–47:2.

of witnesses when addressing a motion for summary judgment.[63] Therefore, the Court concludes that there is a genuine, disputed issue of material fact concerning Mrs. Sosa's need for future medical treatment.

Defendant also contends that Plaintiffs have presented no evidence regarding the projected cost of any such medical treatment. "Future medical expenses are a legitimate form of recovery, even though they are not susceptible of precise mathematical calculations."[64] However, "[a]wards shall not be made for future medical expenses which may or may not occur, in the absence of medical testimony that the expenses for necessary treatment are indicated and setting out their probable cost."[65] On the other hand, "when the need for future medical care has been demonstrated *but cost is not susceptible of determination,* the court may make a reasonable award."[66] For example, in *Guillory v. Avondale Shipyards, Inc.*, the Louisiana Supreme Court upheld a court of appeal's "realistic" award of $15,000, which it reduced from the jury award of $75,000, for future medical expenses, despite the fact that no dollar estimate was made by experts at trial.[67] By comparison, in *Bly v. Prudential Property and Casualty Insurance Co.*, the Louisiana Fifth Circuit Court of Appeal upheld a jury award of $15,000 in favor of one plaintiff despite the

---

[63] *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[64] *Bly v. Prudential Prop. & Cas. Ins. Co.*, 589 So. 2d 495, 497 (La. Ct. App. 1991); *see also Moore v. Kenilworth/Kailas Props.*, 2003-0738, pp. 13–14 (La. App. 4 Cir. 1/7/04); 865 So. 2d 884, 892, *writ denied,* 2004-0348 (La. 4/2/04), 869 So. 2d 882, and *writ denied*, 2004-0367 (La. 4/2/04), 869 So. 2d 883 ("Any computation of a future medical damage award is by its nature a creature of speculation. Therefore, all a finder of fact is able to do is use the testimony and evidence presented at trial to determine, to the extent that it can be determined, what the costs for future medical treatment might be for a complained-of injury.").

[65] *Bell v. N.H. Ins. Co.*, No. 07-138, 2008 WL 2308824, at *5 (E.D. La. June 3, 2008) (Lemelle, J.) (citing *Mendoza v. Mashburn*, 747 So. 2d 1159, 1170 (La. App. 5th Cir. 1999)).

[66] *Bly*, 589 So. 2d at 497.

[67] 448 So. 2d 1281 (La. 1984).

fact that no doctor gave the probable cost for future medical treatment at trial, and no other evidence existed in the record as to the cost of a future surgery that one doctor had stated had only a 40% chance of being necessary.[68] On the other hand, the court in *Bly* rejected a jury award in favor of the other plaintiff in the case where he had failed to establish any causal connection between his potential need for future medical treatment and the accident at issue, because "in the light of the record as a whole, and in the *absence* of *any evidence whatsoever* of the probable cost of future medical care, *or* any estimate thereof, *or* any evidence *or* basis on which an estimate could be made, *or* any evidence that a determination or estimate of future cost could not be reasonably made, . . . any award to [the plaintiff] for future medical expense is *blatant speculation* on the jury's part, a clear abuse of their 'much discretion' and clearly wrong or manifestly erroneous."[69]

---

[68] *Bly*, 589 So. 2d at 498 ("While there is no testimony in the record as to the cost of surgery, we do not find that the amount of $15,000.00 is either unrealistic or unreasonable, and although we believe that the sum may be on the high side, it is not so high as to constitute an abuse of discretion.").

[69] *Id.*

Here, Plaintiffs present no evidence to the Court regarding the possible cost of future medical treatment to Mrs. Sosa. In fact, to the extent that Plaintiffs cite any precise numbers regarding the cost of future treatment, namely by stating that the cost of one cortisone injection is $597, they fail to attach any summary judgment evidence to support that cost. Nevertheless, because Louisiana appellate courts have previously allowed "reasonable" awards for future damages even where no medical testimony or evidence has been presented at trial to substantiate a precise cost for such treatment, the Court declines here to grant summary judgment in favor of Defendant on the issue of the need for future medical treatment or the cost thereof.

### IV. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that DG Louisiana's "Motion for Partial Summary Judgment"[70] is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this  8th day of April, 2016.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[70] Rec. Doc. 19.